IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALMA R. CORDERO-RIVERA,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO. 23-1262 (HRV)

**OPINION AND ORDER**

Alma R. Cordero Rivera ("Plaintiff" and/or "Claimant") moves the Court to remand this case to the Commissioner of Social Security ("the Commissioner"). Ms. Cordero argues that the Administrative Law Judge's ("ALJ") decision was not supported by substantial evidence. However, after a review of the record and the parties' memoranda, I affirm the ALJ's decision.

**STANDARD OF REVIEW**

Under the Social Security Act ("the Act"), a person is disabled if she is unable to do her prior work or, "considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps must be followed in order, and if a person is

1

determined not to be disabled at any step, the inquiry stops. *Id*. Step one asks whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If she is, she is not disabled under the Act. *Id*. At step two, it is determined whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the plaintiff is not determined to be disabled at step three, her residual functional capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four, which compares the plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do her past relevant work, she is not disabled. *Id*.  The plaintiff bears the burden of proof at steps one through four. *Sacilowski v. Saul*, 959 F.3d 431, 434 (1st Cir. 2020). Finally, at step five, the plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). At this step, the Commissioner must present evidence of jobs in the national economy that claimant can perform. *Sacilowski,* 595 F.3d at 343.  If the plaintiff can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id*.

The Act provides that the "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's decision must be reversed only if it was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## BACKGROUND AND PROCEDURAL HISTORY

Ms. Cordero made her initial application for disability benefits on January 26, 2018, alleging that her disability began on November 4, 2009. *See* Transcript of Social Security Proceedings, Docket No. 9, at pgs. 484-490. Plaintiff alleged an onset disability date of December 31, 2017.

The Commissioner emphasizes that plaintiff's alleged onset date of disability coincided with her retirement date, after a 32-year career as a supervisor for a Puerto Rico government agency. (Tr. 517-18). According to the Commissioner, although plaintiff had alleged that she had a number of medical conditions that were severe enough to prevent her from working as far back as 1992 and 2000 (Tr. 484, 517), she went on to work full-time for nearly two more decades despite those conditions (Tr. 518), retiring only because she had reached retirement age and was eligible for a government pension for years of service. (Tr. 28, 736, 749).

The Social Security Administration ("SSA") denied both the claim (Tr. 340-43), and the subsequent reconsideration (Tr. 347-49). Claimant requested a hearing, which was held on April 8, 2022. (Tr. 37-54). She appeared with an attorney and testified before the ALJ. (*Id.*).

On May 4, 2022, the ALJ issued an unfavorable decision. (Tr. 15-36). He found that plaintiff had not engaged in substantial gainful activity since her December 2017 alleged onset date (step one) and had severe impairments (step two) that did not meet or equal any listed impairment (step three). (Tr. 23-25).

Next, the ALJ found that plaintiff had the RFC for light work, as defined in 20 C.F.R. § 404.1567(b), except that she was further restricted to: (1) lifting, carrying 20 pounds occasionally and 10 pounds frequently; (2) sitting for six hours and standing and walking for three hours each at a time; (2) occasional pushing/pulling, operation of hand controls, reaching overhead, kneeling, crouching, crawling, and driving; (3) frequent fingering, feeling, balancing, stooping, and climbing of ramps and stairs; (4) no climbing of ladders, ropes, or scaffolds; and (5) occasional exposure to environmental irritants to humidity and wetness, dust, odors, fumes, and pulmonary irritants, and to extreme cold and vibration. (Tr. 26).

Based on that RFC and vocational expert testimony, the ALJ found that Plaintiff was not disabled because she could perform her past work as a government supervisor. (Tr. 29-30, 51-53).

Ms. Cordero timely filed a request for review of the ALJ's decision on May 12, 2022 (Tr. 481-483), which was denied by the Appeals Council on March 25, 2023. (Tr. 1-8). Accordingly, the ALJ's decision became the Commissioner's final decision. Plaintiff

subsequently filed her complaint for judicial review and brief. (Docket Nos. 1 and 10). The government responded. (Docket No. 13).

## ANALYSIS

The ALJ determined that although Ms. Cordero had several severe impairments (lumbar degenerative disc disease, bronchial asthma, and status-post fracture of the wrists), these did not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). According to the ALJ, no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments. (Tr. 23).

Plaintiff highlights several errors in the ALJ's decision. First, she claims that the ALJ erred in assessing her physical RFC and did not base it on substantial evidence. (Docket No. 10 at pgs. 12-21) because: (1) he failed to properly assess the limitations regarding her asthma and incorrectly determined that it did not meet the 3.03 listing criteria; (2) failed to incorporate her urinary incontinence in the RFC analysis; and (3) disregarded four medically diagnosed conditions: obesity, acute erosive gastritis, hyperlipidemia, and hypercholesterolemia. (*Id.*) Second, plaintiff contends that the mental RFC determination is not supported by substantial evidence. (*Id.*).

**A. Physical RFC assessment**

    **(i)  Asthma**

In the written determination denying disability benefits, the ALJ considered plaintiff's asthma condition but concluded that the medical evidence did not present the limitations and severity required by Listing 3.00, for Respiratory System, specifically

5

Section 3.03, Asthma. (Tr. 25). The ALJ relied on portions of the record where the treating pneumologist discussed symptoms of cough only and gave importance to the lack of recurrent attacks for at least six times a year. (*Id.*).

Plaintiff responds that the ALJ did not properly consider the record. She points to several entries from January 2018 through 2022, displaying instances of medical appointments and treatment notes referencing plaintiff's persistent cough and bronchial asthma. (Tr. 720-22, 828-831, 850-55, and 860-62).

Notably, the record shows that on January 5, 2017, Ms. Cordero went to the emergency room at Dr. Pila Hospital complaining of respiratory problems that had lasted for three weeks. (Tr. 190). On February 14, 2018, she was referred to Med Center due to an asthma attack. The treatment notes for that day show that she had "acute upper respiratory infection" and was treated with medication, specifically, "Ipratropium; Tessalom perles 100mg; Prednisolone 15mg." (Tr. 222-223, 785-786).

For a claimant to show that her impairment meets or medically equals a listing, said impairment must meet or equal all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). Listing 3.03 requires forced expiratory volume (FEV1) values of 1.75L or less during a pulmonary function test, measured within a 12-month period where asthma-related episodes require three hospitalizations at least 30 days apart. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03. Although the record does show that Ms. Cordero received emergency treatment, there's no evidence that she had the three required hospitalizations during a 12-month period and at least 30 days apart to meet the Listing 3.03 criteria.

Even under this scenario, Claimant's condition could still medically equal the listing if other findings related to her asthma "are at least of equal medical significance" to those criteria. 20 C.F.R. § 416.925(b)(1)(ii). *Harris v. Soc. Security administration, Comm'r*, No. 2:20-CV-00887-HNJ, 2022 WL 875041, at *4 (N.D. Ala. Mar. 23, 2022).

Subpart A of Listing 3.03 requires a claimant's spirometry test results to fall below a specified FEV1 value based upon the claimant's height. 20 C.F.R. 404, Subpt. P, App. 1 § 3.03(A). Here, plaintiff had higher (normal) FEV1 levels consistent with only mild airway dysfunction. (Tr. 742-45). During an examination conducted by pulmonologist Dr. Domingo Chardón-Feliciano on September 19, 2018, he found that plaintiff had a "mild degree of small airway dysfunction" suggested by a mildly reduced FEF25-75 and a normal FVC and FEV1. Dr. Chardón added "this may be reversible in nature" and recommended repeat testing and bronchodilator administration. (*Id.*).

In 2020 and 2021, Ms. Cordero was also treated through telemedicine to renew her medication and the consultation revealed that she was suffering from bronchial asthma exacerbation. (Tr. 929-932, 938-42, 945). However, the record does not show her FEV values at the time. On August 5, 2021, Ms. Cordero was examined by Dr. Hector Puig-Ramirez. (Tr. 934-35). Dr. Ramirez concluded that although the FEV1 and FVC were reduced, the FEV1/FVC ratio was normal. (*Id.*). He diagnosed Ms. Cordero with mild airway obstruction. (*Id.*).

The records from Caribbean Pulmonary Medical Society from August 2, 2018, through February 8, 2021, show that Ms. Cordero's main reported symptom was a cough. (Tr. 820, 825-26, 838, 840-43).

7

These findings and medical records support the conclusion that plaintiff's asthma symptoms were not severe enough to be presumptively disabling under Listing 3.03.

In addition, plaintiff challenges the RFC finding that she could tolerate occasional exposure to environmental irritants, arguing that the State agency consultants "determined [her] to avoid the aforementioned" (Pl. Br. 14). Actually, the physicians recommended only that plaintiff "[a]void concentrated exposure" to environmental irritants. (Tr. 320, 336)(emphasis supplied). As other courts have noted, "[a]voiding concentrated exposure is not the same as avoiding all exposure. Further, avoiding concentrated exposure is less limiting than being restricted to occasional exposure to extreme heat, extreme cold, humidity, and fumes/gases." *Parr v. Kijakazi*, No. 3:20-cv-804-CWB, 2023 WL 2720814, at *12 (M.D. Ala. Mar. 30, 2023) (collecting cases). In any case, according to the Dictionary of Occupational Titles, plaintiff's past relevant work as a supervisor does not require any exposure to environmental irritants. *See* U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. rev. 1991), § 188.137-010 (government services supervisor).

### (ii)   Urinary Incontinence

Next, plaintiff argues that she had a "low bladder condition" that prevented her from holding her urine (Tr. 49) and she testified that the condition had affected her since her ovarian surgery (*id*.), which took place in 1993. (*See* Tr. 793).

Plaintiff argues that the ALJ "downplayed" her condition (Docket No. 10, pg. 17), and failed to include it as part of the RFC analysis even though the record contains sufficient evidence, such as the progress notes of Dr. Alberto Corica. In his determination,

the ALJ acknowledged plaintiff's reports of "low bladder since she had an ovary surgery, [which] causes incontinence." (Tr. 27).

According to the Commissioner, two facts make plaintiff's argument unavailing. First, that she went on to work full time for two decades after her surgery and retired only because she had enough years of service despite having the condition since 1993. The Commissioner cites to *Jesse P. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1361, 2022 WL 2079080, at *8 (N.D.N.Y. June 9, 2022) (noting that reports of disabling physical limitations dating back a decade were "difficult to reconcile with the factual reality that plaintiff continued to perform full-time, heavy-duty work" during that period).

And second, that her testimony alone does not suffice to justify an RFC finding. An ALJ can only consider limitations that are attributable to a "medically determinable" impairment. *See* 20 C.F.R. § 404.1529(b) ("Your symptoms ... will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."); 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source.").

Upon review of the record, I find that plaintiff was referred by her gynecologist, Dr. Quintana, for evaluation of Mixed Urinary Incontinence after complaining of incomplete bladder emptying. (Tr. 662). She received treatment in A.P.C.G. Urology from July 2015 through 2016. (Tr. 660-61). The treatment notes of Dr. Federico A. Corica show that plaintiff complained of a "sensation of incomplete bladder emptying." (Tr. 662). Several tests and exams were performed, such as a urinalysis, a urine culture, as well as a bladder and renal sonogram and other exams were performed. (Tr. 664-667,

888). On July 29, 2015, there was a follow-up visit with the doctor. The renal sonogram had normal results, which were discussed with Ms. Cordero. (*Id.*).

On August 20, 2015, a cystoscopy was performed, and notes show that the results were: "Mild UH, and SUI, No cystocele, No rectocele. Urine Cytology obtained." A diagnosis of mixed urinary incontinence with predomination of UUI was entered by Alberto P Corica Guinle, M.D. (Tr. 667).

The record does not reveal any follow up treatment after February 2016, even though plaintiff worked full time until December 31, 2017, when she retired. Furthermore, plaintiff denied any issues with urinary frequency or incontinence during her September 2018 consultative examination with Dr. Santiago (Tr. 750). Also, none of the doctors that examined her recommended a treatment or found bladder-related functional limitations. (Tr. 318-21, 335-38). *See Fogg v. Schweiker*, No. 81-1232, 1981 U.S. App. LEXIS 21327 (1st Cir., Oct. 13, 1981)(affirming the Social Security's determination that there was no nonexertional impairment resulting from urinary tract disease). Finally, I am persuaded by the Commissioner's argument regarding Ms. Cordero's ability to perform her job from 1993 until her retirement in 2017 despite the condition.

Simply put, the evidence of plaintiff's urinary incontinence does not satisfy the frequency, duration or severity necessary to constitute a severe medically determinable impairment. Plaintiff has not shown that the RFC, which provides for "light work" would not accommodate her urinary condition.

### (iii) Obesity, acute erosive gastritis, hyperlipidemia, and hypercholesterolemia

Plaintiff further claims that the ALJ did not consider her other impairments and simply disposed of the issue with the following "boilerplate sentence": "The undersigned considered all of Ms. Cordero's medically determinable impairments, including those that are not severe, when assessing claimants' residual functional capacity." (Docket No. 10 at pgs. 17-20).

Plaintiff points to case law standing for the proposition that an ALJ must make particularized findings. *See Smith v. Saul*, No. 18-CV-1086-PB, 2019 WL 5957294 at *4 (D.N.H. Nov. 13, 2019)("this court has consistently ruled that a 'boilerplate assertion that an ALJ considered all of the claimant's impairments in combination, without describing any actual analysis, is insufficient'")(internal citations omitted). According to plaintiff, the ALJ should have mentioned and discussed the impact of her other conditions, namely, obesity, acute erosive gastritis, hyperlipidemia, and hypercholesterolemia, in his RFC assessment.

The Commissioner responds that plaintiff's challenge fails because she did not proffer any medical evidence supporting additional RFC limitations. The Commissioner cites case law holding that an ALJ is not required to consider "sparse" evidence pertaining to non-severe impairments. *See López v. Comm'r of Soc. Sec.*, No. 3:22-cv-1059 (MDM) (D.P.R. July 18, 2023); *Rosado-Mejias v. Comm'r of Soc. Sec.*, Civ. No. 20-1438 (BJM), 2022 WL 909385, at *10 (D.P.R. Mar. 29, 2022) and *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012).

After reviewing the record, I find little evidence of the conditions that plaintiff pinpoints. It is also worth noting that plaintiff did not list any of these conditions in her request for social security disability benefits.[1]

The record only mentions obesity in one instance, a consultation with Dr. Rafael J. Rivera Berrios, a Cardiologist, on February 25, 2019. (Tr. 814). In his treatment notes, Dr. Rivera Berrios indicated that the patient's "general fatigue could be associated with sleep apnea, obesity or deconditioning." (*Id.*).

With regards to gastritis or a gastrointestinal condition, the record reflects that plaintiff's GI track was "normal." (Tr. 903, 904, 906, 907, 911-12, 915, 959). No presence of acute erosive gastritis is even mentioned.

Hyperlipidemia is only mentioned once, during a December 21, 2021, consultation with Dr. Rivera Berrios, where he notes "Mixed hyperlipidemia" in his assessment. (Tr. 920). In his treatment plan, he concludes:

> Patient hemodynamically stable. Physical exam unremarkable. Control blood pressure but pt continues reffereing [sic] of palpitations and chest discomfort while episodes. Holter monitoring noted on NSR and PAC' and PVC's w/ no sign of malignant arrythmias nor pauses. EKG noted NSR, iRBBB, LAD. No acute ischemic changes. Unable to performed 2d echo since failure to f/u since 2019. Good tolerance to exercise and physical activities Oriented about low sodium diet and cholesterol. Oriented about weight loss program and exercise. Will increase Toprol 50mg PO daily to improve BP and PAC/PVC's.

(*Id.*).

---

[1] In her filing, plaintiff listed the following conditions: asthma; hypertension; cardiac condition; thyroid condition; hand injury; anxiety and low bladder. (Tr. 625).

Finally, as to hypercholesterolemia, the medical evidence shows that plaintiff suffers from hypercholesterolemia, or high cholesterol.[2] In all these record entries, plaintiff consulted an endocrinologist for evaluation of hypothyroidism. (*Id.*). However, none of the Progress Notes indicates that plaintiff's condition imposes a functional limitation, or requires a particular management outside the medication she was already taking.

Plaintiff has not pointed to any functional limitation—whether attributable to one these discrete impairments or multiple impairments in combination—that the ALJ unreasonably omitted from the RFC assessment. When assessing a claimant's RFC, an ALJ need not consider conditions for which there is only "a paucity of medical evidence in the record." *Perez v. Sec'y of Health & Hum. Servs.,* 958 F.2d 445, 447 (1st Cir. 1991).

Accordingly, I find that the ALJ based his conclusions on substantial evidence and applied the correct legal principles. The alleged errors simply were not committed.

B.   **Mental Residual Functional Capacity**

(i)   **Anxiety**

Plaintiff avers that the ALJ did not properly consider her mental limitations, even though she claimed anxiety as one of the conditions she suffers from. According to plaintiff, the severity of her anxiety symptoms is evidenced by the medical notes of Dr.

---

[2] Progress Notes dated: 4/4/2019 (Tr. 916); 6/26/2029 (Tr. 913); 7/18/2019 (Tr. 907); 8/26/2019 (Tr. 904); 12/18/2019 (Tr. 960); 3/3/2022 (Tr. 952).

Hugo Roman and Annette de Paz-Ortiz. In addition, Dr. Solimar Rodriguez; a psychologist; diagnosed her with anxiety. (Docket No. 10 at pg. 23).

Defendant responds that the record supports the ALJ's conclusion that plaintiff did not suffer from a mental impairment because, among other reasons, "plaintiff did not receive mental health treatment since 2006 or 2007" and all the consultant doctors agreed that, regardless of her diagnosis, she did not have any mental limitations. (Docket No. 13 at pg. 12).

The record establishes that Ms. Cordero was treated by psychiatrist Héctor L. Rodríguez for some period between 2006 and 2007. Dr. Héctor Rodríguez' notes, dated October 10, 2006 (Tr. 630-31), November 11, 2006 (Tr. 628), April 7, 2007 (Tr. 627), and May 12, 2007 (Tr. 626), show that he recommended medication, as well as psychotherapy and supportive treatment. He also noted that the patient was "stable." (*Id.*) The ALJ correctly pointed out that there's no evidence of treatment after the May 2007 progress report.

On November 26, 2018, and December 10, 2019, plaintiff was examined by state consultants Drs. Hugo Roman-Rivera and Annette de Paz-Ortiz, respectively. Dr. Roman-Rivera concluded that plaintiff's condition was "not severe." (Tr. 317-318). Likewise, Dr. De Paz-Ortiz determined that the evidence in file supported a "not severe" rating from the mental perspective. (Tr. 334). Both concluded that plaintiff had "mild" limitations to understand, remember, or apply information; mild limitations to interact with others; mild limitation to concentrate, persist, or maintain pace; and mild limitations in adapting and managing oneself. (Tr. 317 and 334, respectively).

The ALJ did not find these opinions persuasive "because the medical evidence of record shows that currently claimant does not suffer from a mental impairment, even a mild one." (Tr. 24).

Having a diagnosis of a mental condition is not the same as having an impairment as defined by the SSA. A "severe" mental impairment is one that "significantly limits [claimant's]…. ability to perform basic work-related functions." *McDonald v. Sec'y of Health & Hum. Servs.*, 795 F.2d 1118, 1120 (1st Cir. 1986). If the claimant's impairment is "non-severe," then he or she is considered not disabled, without any consideration of age, education, or work experience, and without any further consideration of steps three through five. *Id*.

There is no indication on the record, other than Ms. Cordero's own averments to support the severity of her anxiety disorder. The medical notes from her treating physician date back to 2006 and 2007. Second, there is no indication that she received treatment at any time after. If it was the case that she did not do so for a compelling reason—i.e., an inability to process her mental impairment, lack of insurance, or issues with taking medication, *see Contreras v. Saul*, 477 F. Supp. 3d 1107, 1126 (S.D. Cal. 2020)(listing case law)—the record is silent as to those justifications. And third, none of the doctors who examined Ms. Cordero opined that she had a severe mental impairment.

On September 14, 2018, plaintiff was evaluated by Dr. Solimar Rodríguez, a clinical psychologist. (Tr. 734). She was referred by the Social Security Disability Determination Program for a mental status evaluation. In her clinical observations, Dr. Rodríguez noted that during most of the interview she was "sad" because she was worried about the effect "of the Hurricane" on persons she knows. (Tr. 737). As to general

behavior, the doctor noted that plaintiff was "smiling" during the interview and maintained "adequate eye contact" and "rapport." (Tr. 738).

In the diagnosis portion of the report, Dr. Rodríguez wrote "Adjustment Disorder with Anxiety features." (Tr. 739). As to prognosis, she stated that it was "good" and indicated that "Mrs. Cordero possesse[d] a normal mental status at the moment of the interview"; and "[h]er emotional problem [did not] seem to affect her interactions with others." (*Id.*).

Dr. Rodríguez' determination is consistent with the ALJ's findings that Claimant's alleged condition of anxiety disorder "does not give rise to a medically determinable impairment." (Tr. 25). A claimant must meet the burden of proof that the impairment "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Cookson v. Colvin*, 111 F. Supp. 3d 142, 150–51 (D.R.I. 2015)(citing 20 C.F.R. § 404.1520(c)).

## CONCLUSION

For the reasons stated above, I find that the ALJ properly evaluated the medical evidence on the record in determining plaintiff's RFC and employed the proper legal standards. The Commissioner's decision is supported by substantial evidence and accordingly, must be AFFIRMED.

**IT IS SO ORDERED**

In San Juan, Puerto Rico this 29th of May, 2024.

           S/Héctor L. Ramos-Vega
           HÉCTOR L. RAMOS-VEGA
          UNITED STATES MAGISTRATE JUDGE